IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MICHAEL T. WISE, | ) | Civil Action No.: 4:06-1842-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | |
| | ) | REPORT AND RECOMMENDATION |
| LEXINGTON COUNTY SHERIFF'S | ) | |
| DEPARTMENT; SHERIFF JAMES METTS; | ) | |
| MAJOR JAMES E. HARRIS; CAPTAIN | ) | |
| JOSEPH QUIG; LIEUTENANT KEVIN | ) | |
| JONES, IN THEIR INDIVIDUAL AND | ) | |
| OFFICIAL CAPACITIES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Michael T. Wise, filed this action under 42 U.S.C. § 1983[1] on June 20, 2006, alleging

that his constitutional rights were violated. On July 21, 2007, defendants filed a motion for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure along with supporting memorandum,

exhibits, and affidavits. (Doc. #28).  Because the plaintiff is proceeding pro se, he was advised on or about

July 26, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to

the defendants' motion for summary judgment with additional evidence or counter affidavits could result

in dismissal of his complaint.   Plaintiff filed a response in opposition on August 30, 2007. (Doc. #33).

Plaintiff filed a motion for summary judgment on October 17, 2007, and defendants filed a reply. (Docs.

#35 and 36).

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of
28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive
motion, the report and recommendation is entered for review by the District Judge.

## II.  DISCUSSION

### A. ARGUMENT OF THE PARTIES

Plaintiff alleges that he has been denied access to courts because there is no law library at the Lexington County Detention Center (LCDC). Specifically, plaintiff asserts while a pretrial detainee at LCDC "defendants have completely denied plaintiff access to all law library materials and have actively hindered plaintiff's efforts to obtain his own research information." (Amended Complaint, p. 5). Plaintiff alleges his arrest warrants were based on false information and that he has been unable to file civil suits with regard to these issues due to not having access to a law library. Plaintiff alleges he has suffered actual harm as a result of "defendant's actions because plaintiff cannot afford the benefit of counsel to litigate this matter and because plaintiff has been so limited by the complete absence of legal research materials and other sources of information about the law as to be unable to file a complaint to request the Court examine the propriety of the State's actions against plaintiff and grant appropriate relief." (Amended complaint). Further, plaintiff alleges that his actual injury is the fact that during the time period he did not have an attorney on his criminal charges, he was denied his request for a preliminary hearing and was "provided absolutely no means of finding out what steps to take to remedy the denial of his claim to a preliminary hearing of the charges." (Amended complaint). Plaintiff also alleges in his amended complaint that a legal book he ordered was returned to the commercial sender without notification to him. Plaintiff requests monetary and injunctive relief.

Defendants filed a motion for summary judgment asserting plaintiff's case should be dismissed in that he has failed to establish a claim that rises to a constitutional level for inadequate access to the courts. Further, defendants assert the case should be dismissed based on Eleventh Amendment immunity, and qualified immunity.

2

## B.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell,  441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam).  However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d

3

1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).  Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

## C.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the  case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to

make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## D. ANALYSIS

## DENIAL OF RIGHT OF ACCESS TO COURTS

As previously sated, plaintiff has alleged lack of access to a law library at LCDC. Plaintiff also argues that a legal book he ordered was returned to the commercial sender on two different occasions without notifying him.

Defendants argue that a local jail is not required to provide a law library. Defendants argue that plaintiff has been represented by counsel with regards to the criminal charges pending against him. Hause v. Vaught, 993 F.2d 1079 (4th Cir. 1993). Furthermore, defendants assert plaintiff has failed to show any actual injury or adverse consequence resulting from these allegations.

Defendants submitted the affidavit of Ronald O'Neill who attests he is employed by the duly elected Sheriff of Lexington County, and assigned to the LCDC as the Inmate Services Commander. As part of his duties, O'Neill attests that he oversees the inmate mail. O'Neill attests that the LCDC has a policy and procedure for the intake and distribution of mail for inmates which provides a list of certain items which should not be delivered to the inmate, opened or examined by staff. O'Neill attests that those items of mail which will not be accepted include newspapers, magazines, books or packages. Packages include padded/bubbled envelopes and oversized envelopes. O'Neill avers that inmates at LCDC are informed of the restrictions on the receipt of mail and receive a copy of these restrictions upon booking and that these rules are posted in each housing unit. O'Neill attests that the Inmate Rules clearly state that oversized cards and packages will not be accepted. (See LCDC Policies and Inmate Rules attached to the affidavit). Further, O'Neill avers that mail items which are not delivered to an inmate are returned to the sender's address without examination and a photocopy of the outside of the package is made, forwarded to the inmate for his

or her signature, and then retained on file. O'Neill attests that this policy serves a legitimate penological interest as it prevents the introduction of contraband and weapons into the facility, as well as reducing the risk of fire hazards in the facility due to accumulation of large amounts of paper. Additionally, O'Neill attests that by refusing to accept packages under the mail policy, the LCDC is able to avoid the extreme administrative cost of carefully searching each and every package that may contain hidden contraband. However, O'Neill attests that in some cases if an inmate has sent off for a "package" that he or she needs for a particular reason, that inmate can fill out a request to staff asking for pre-approval of the particular package which will be granted if there are compelling reasons and no security risks. If the package arrives without pre-approval, then it would be returned to sender per the policy. O'Neill attests that packages that are legitimately, and patently, legal mail, and have been sent to the inmate by the Court or an Attorney, are generally delivered. O'Neill also attests that the LCDC is not equipped with a law library but, based on plaintiff's records, he is currently represented by counsel. O'Neill attests that inmates at the LCDC are allowed access to their attorneys, by appointment, seven days a week. O'Neill attests that defendant Harris is the Jail Administrator, who holds the rank of Major and is employed by the Sheriff of Lexington County. Defendant Quig is a Captain at the LCDC and is also employed by the Sheriff of Lexington County. O'Neill avers that defendant Jones is a Lieutenant at the LCDC and is employed by the Sheriff. (O'Neill's affidavit).

In response in opposition to the motion for summary judgment, plaintiff argues there has been three instances in which he suffered actual injury. Plaintiff alleges that he was denied a preliminary probable cause hearing pursuant to state law and denied a speedy trial for which he has been unable to research issues to file suit. Plaintiff also alleges that he has been unable to file habeas corpus pleadings.

The plaintiff's claims relating to the lack of access to a law library at the LCDC do not raise a cognizable §1983 claim. Plaintiff's claims relating to the right to a law library at LCDC are foreclosed by Fourth Circuit case law. The United States Court of Appeals for the Fourth Circuit has ruled the Constitution of the United States does not require every local jail even to have a law library. See Magee v. Waters, 810

F.2d 451, 452 (4th Cir.1987). The holding in <u>Magee v. Waters</u> is based on the knowledge that county jails are generally short-term facilities, wherein " 'the brevity of confinement does not permit sufficient time for prisoners to petition the courts." ' <u>Magee v. Waters</u>, 810 F.2d at 452. <u>See also</u> <u>Cruz v. Hauck</u>, 515 F.2d 322, 331-333 (5th Cir.1975), *cert. denied,* <u>Andrade v. Hauck</u>, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). In <u>Cruz v. Hauck</u>, the Court noted: "access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of *the State."* 515 F.2d at 331 (emphasis added). Also on point are <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1040-41 & nn. 24-25 (3d Cir.1988); and <u>Sands v. Lewis</u>, 886 F.2d 1166, 1170-71 (9th Cir.1989)(collecting cases). In any event, the obligation to provide legal assistance to plaintiff rests with the State of South Carolina, *not* with the named Defendants in the above-captioned case. Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts.    (<u>Pink v. Lester</u>, 52 F.3d 73 (4th Cir. 1995), "negligent denial of access to the courts is not actionable under § 1983." ) A prisoner must allege adverse consequence as a basis for allegations that the delay or non delivery deprived him of meaningful access to the courts.  <u>White v. White</u>, 886 F.2d 721 (4th Cir. 1989) and <u>Morgan v. Montanye</u>, 516 F.2d 1367 (2d Cir. 1975 ) <u>cert. denied</u>, 424 U.S. 973 (1976).   Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to  pursue a legal claim.  <u>Lewis v. Casey</u>, 518 U.S.343 (1996).

The actual injury plaintiff has alleged is that he was not able to research the steps to take "to remedy the denial of his claim to a preliminary hearing of the charges"and to be able to bring a complaint seeking to have the court consider the due process implications of being denied a preliminary hearing, to file suit for denying him the right to a speedy trial, and he has been unable to file habeas corpus proceedings." There is no constitutional right to a preliminary hearing. <u>State v. Keenan</u>, 278 S.C. 361, 365, 296 s.E.2d 676, 678 (1982).  In this case, plaintiff has failed to submit any objective evidence showing any actual injury arising

from the allegations concerning denial of access to the courts.[2] Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim.  Lewis, supra.

Additionally, plaintiff is represented by counsel for the pending criminal charges. Longstanding case law in this circuit provides that if a pre-trial detainee has an attorney–or is offered counsel but waives his or her right to counsel-he or she has not constitutional right of  access to a law library or to legal materials when he or she is a pre-trial detainee. See United States v. Chatman, 584 F.2d 1358, 1360 (4th Cir. 1978); Trotman v. York County Detention Center, 2003 WL 23198860 (D.S.C.)).

Plaintiff's allegations of being denied legal material fails. Plaintiff claims in his amended complaint that a package which contained a legal book or legal material that he ordered was returned to the sender. To state a claim based on delay or nondelivery of legal mail, a prisoner must allege adverse consequence as a basis for allegations that the delay or non delivery deprived him of meaningful access to the courts.  White v. White, 886 F.2d 721 (4th Cir. 1989) and Morgan v. Montanye, 516 F.2d 1367 (2d Cir. 1975 ) cert. denied, 424 U.S. 973 (1976).  Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts.    (Pink v. Lester, 52 F.3d 73 (4th Cir. 1995), "negligent denial of access to the courts is not actionable under § 1983." ) Plaintiff has failed to assert any

---

[2] Plaintiff alleged in his opposition that he filed a petition for a Writ of Habeas Corpus in the Eleventh Circuit Court of General Sessions on March 21, 2007, alleging that he had been arrested and charged pursuant to knowlingly false warrant affidavits but that no hearing was ever held on the petition. Plaintiff attached a copy of a proposed document entitled "Petition for Writ of Habeas Corpus" in the state court concerning the alleged false police affidavits and testimony. (Attachment 26 to plaintiff's opposition). However, it does not indicate that it was filed or that it was dismissed. Additionally, plaintiff alleged that on January 16, 2006, he mailed a request for judicial inquiry to the South Carolina Supreme Court alleging that he had been arrested and charged on false warrant affidavits but that his request was denied because the Court did not have jurisdiction to entertain the issue. Plaintiff attached a copy of an Order from the South Carolina Supreme Court listing several matters that were dismissed pursuant to  Key v. Currie, 305 S.C. 115, 406 S.E. 2d 356 (1991) , because no extraordinary reasons exited to entertain them in the Court's jurisdiction. One of the matters listed was "Michael T. Wise. Letter to the Chief Justice dated January 16, 2006." Thus, plaintiff has alleged that he has been able to file several documents with different courts but has failed to show "actual injury" based on the allegations in this complaint.

evidence that he was denied access to the court due to his alleged failure to receive mail. Further, there are regulations affecting the sending of mail to prisoners centrally concerned with maintenance of prison order and security, which are measured under reasonableness test of Turner v. Safley, 482 U.S. 78 (1987). Thornbough v. Abbott, 490 U.S. 401 (1989). Such regulations are valid if reasonably related to legitimate penological interests, giving prison officials considerable deference in regulating delicate balance between order and demands of "outsiders" who seek to enter prison environment. Id.

No evidence has been presented by the plaintiff that indicates inappropriate procedures or actions by LCDC in regards to his mail privileges delayed or deprived him of access to the courts. As set out in O'Neill's affidavit, the rules regarding mail are for security reasons. The plaintiff has failed to present any evidence to defeat summary judgment.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any prisoner, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previous discussed, the Supreme Court noted that the administration of state prisons is a complex task, with numerous administrative goals, including the maintenance of order and discipline within the prison, the prevention of escapes and, to the extent possible, the rehabilitation of the inmates. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some prison practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

For the foregoing reasons, the undersigned finds that the plaintiff's allegations pertaining to the lack of access to a law library and the allegation that the plaintiff has not received legal materials should be

9

dismissed. Therefore, the undersigned recommends that summary judgment be granted on this issue in favor of the defendants.

## ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

10

There is no dispute that the defendants were employees of the LCDC and, thus, state officials acting in their official capacity while employed by the LCDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages.

## QUALIFIED IMMUNITY

Defendants assert even if the Court concludes that the facts of the case are sufficient to establish a constitutional claim under any of the plaintiff's causes of action, dismissal of all claims is appropriate based upon the qualified immunity of the defendant. Defendants contend that he is entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982).

Although the burden of showing immunity remains on the defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  The defendant argues that he is entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity.  That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit  stated:

> Qualified immunity shields a governmental official from liability for civil

11

> monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent.  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985).


In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of  Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits.  Without such immunity, the operations of government would be immobilized.  Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment."  The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988).  Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those

federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. §

1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the

defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that

the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further

explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded
> from liability for money damages so long as their conduct does not violate
> clearly established statutory or constitutional rights of which a reasonable
> person would have known.  Moreover, there are two levels at which the
> immunity shield operates.  First, the particular right must be clearly
> established in the law.  Second, the manner in which this right applies to
> the actions of the official must also be apparent.  Officials are not liable for
> bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendant  (i) violated a particular right clearly

established in law, and (ii) the application of that right to the actions of the official must be apparent. The

plaintiff in this case has not done so. The undersigned cannot conclude that the defendants in this case

"transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra.

Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be

granted on the basis of qualified immunity.

For the above stated reasons, it is recommended that plaintiff's motion for summary judgment be

denied.

## III.  CONCLUSION

Based on the above, the undersigned RECOMMENDS that defendants' motion for summary

judgment (document # 28) be GRANTED.

13

Additionally, it is RECOMMENDED that plaintiff's motion for summary judgment (document #35) and all other outstanding motions be DENIED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

December 11, 2007
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**